DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Vinton County Court of Common Pleas, which, following a plea of no contest, found Defendant-Appellant Gregory L. Firestone guilty of nonsupport of dependents in violation of R.C. 2919.21(B). Appellant argues that the trial court erred in accepting his plea of no contest by not readvising him of his right to counsel as required per Crim.R. 11(C). Appellant also argues that the trial court failed to fully explain the nature of a no contest plea and the charge he faced. Finally, appellant argues that the trial court erred in finding him guilty on his no contest plea when it had information from the appellant explaining the circumstances of the charge. We find appellant's arguments to be without merit and affirm the judgment of the trial court.
 STATEMENT OF THE CASE
On July 30, 1999, the Vinton County Grand Jury issued an indictment against appellant for the nonsupport of dependents, in violation of R.C.2919.21(B). The indictment alleged that appellant failed to provide support for his two dependent children, Ashley Firestone and Zachariah Scarberry, as required by court order. The period of nonpayment was alleged to be from March 1, 1998, to July 23, 1999, for a total accumulated period exceeding twenty-six weeks out of a period of time less than one hundred four weeks. The alleged crime was, therefore, a fifth degree felony under R.C. 2919.21(G)(1).
A summons on the indictment was issued on August 11, 1999. It ordered appellant's appearance in the Vinton County Court of Common Pleas on September 3, 1999. The summons was served on August 15, 1999, and appellant appeared in court for his arraignment as required.
At his arraignment, appellant, who was without counsel, was informed by the court of the charge against him, the maximum fine and prison sentence permitted, and his right to counsel or appointed counsel if he could not afford it. The court then asked if appellant intended to be represented by counsel, to which appellant responded "no." For clarification, the court asked if appellant wanted the court to appoint an attorney for him, to which appellant answered "no." The court finally asked appellant if he understood that he had the right to a court appointed attorney, and appellant replied in the affirmative.
The court then asked appellant if he was prepared to enter a plea to the charge. Appellant responded with an ambivalent answer, but indicated that he wanted to plead no contest. The court again explained the no contest plea and appellant responded that he pled no contest. The court then described the requirement that appellant understand the various rights he would be waiving by pleading no contest. The court explained each of the following rights and inquired concerning each one whether the appellant understood that he was waiving that right: the right to a trial or jury trial, the right to have the prosecution prove each element of the charge beyond a reasonable doubt, the right to remain silent and not testify at trial, the right to compel witnesses to appear to testify, the right to present a defense, and the right to confront and cross-examine witnesses. Appellant responded to the explanation of each individual right that he understood the right and that he was waiving that right.
Finally, the court asked appellant if he desired to proceed on his own, without an attorney, and appellant responded "yes." The court then determined that appellant was knowingly, intelligently, and voluntarily waiving the rights previously discussed and his right to counsel. The court accepted appellant's plea of no contest and asked the prosecutor to recite the facts that led to the indictment.
The prosecution stated that appellant was under support orders from the juvenile court, one for Ashley Firestone and another for Zachariah Scarberry. The two orders were combined in November 1995 for $70 per week for both children. The prosecutor further stated that there had been no payments made since March 1, 1998. As of September 1, 1999, support arrearages totaled slightly over $7,000.
The court then allowed appellant to make a statement concerning the reasons why he failed to pay the ordered child support. Appellant stated that on March 10, 1998, he had a minor accident while driving a truck for his employer, Nickles Bakery, and was sent for a physical and drug screening. While being examined, the physician noticed some problems with appellant's neck. These neck problems, which were the result of an earlier injury with another employer, disqualified appellant from driving for the bakery. Appellant further explained that since that time, he was in the midst of acquiring and receiving workers' compensation and that money was being paid through workers' compensation to the Child Support Enforcement Agency (CSEA). Other then workers' compensation payments, appellant had no other form of income. Appellant additionally stated that his arrearages should be caught up from a lump sum payment from the workers' compensation agency, and that he should begin receiving bi-weekly checks from which support payments would be withheld and paid directly to the CSEA.
Following appellant's statement, the court concluded the hearing without making a determination as to appellant's guilt. The court explained that it wanted more information before making its judgment and continued the hearing until September 24, 1999.
The second hearing was held on September 24, 1999, and the arrearages as of that date were determined to be $5,576.40. Appellant appeared without counsel. The court then heard the testimony of Granville Powell, an acquaintance of appellant's. Mr. Powell testified that during the period of nonpayment, he saw appellant working at a shop. Appellant responded to this testimony by telling the court that he was simply helping a friend clean up his scrap-yard by cutting up some metal with a torch. The court then heard from Teresa Eddie, the mother of appellant's children, who testified that since August 1999, she had received about three payments totaling approximately $1,600. The court found appellant guilty of nonsupport of dependents under R.C. 2919.21(B).
A sentencing hearing was held on February 23, 2000, and appellant, who again represented himself, was sentenced to three years of community control sanctions under the supervision of the Adult Probation Department. In addition, he was required to undergo drug and alcohol abuse screening and treatment and make additional support payments of $200 a month until the arrearages were paid. Finally, appellant was required to pay court costs.
Appellant filed a timely notice of appeal and presents five assignments of error for our review.
FIRST ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN ACCEPTING DEFENDANT'S PLEA OF "NO CONTEST" WITHOUT FIRST READVISING HIM OF HIS RIGHT TO COUNSEL PURSUANT TO CRIMINAL RULE 11(C) PRIOR TO EXPLAINING THE EFFECT OF THE PLEA.
 SECOND ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN ACCEPTING DEFENDANT'S PLEA OF "NO CONTEST" WITHOUT FIRST FULLY EXPLAINING THE NATURE OF THE CHARGE AGAINST HIM, SPECIFICALLY THAT THE OFFENSE CHARGED, SECTION 2919.21(B), HAS A STATUTORY AFFIRMATIVE DEFENSE AVAILABLE, SECTION 2919.21(D), WHICH WAS CLEARLY APPLICABLE TO THIS CASE.
 THIRD ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN ACCEPTING DEFENDANT'S PLEA OF "NO CONTEST" WITHOUT FIRST FULLY EXPLAINING THE NATURE OF THE CHARGE AGAINST HIM IN THAT A CONVICTION ENHANCES THE PENALTY FOR A SECOND CONVICTION (2919.21(G)(1) OHIO REVISED CODE. [sic]
 FOURTH ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED BY INFORMING DEFENDANT OR ALLOWING DEFENDANT TO REASONABLY INFER HE COULD PRESENT EVIDENCE TO EXPLAIN THE ADMITTED CONDUCT.
 FIFTH ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED BY FINDING DEFENDANT GUILTY AFTER RECEIVING THE EXPLANATION OF FACTS FROM THE PROSECUTION AND BEING AWARE DEFENDANT HAD NOT BEEN ABLE TO WORK FOR MEDICAL REASONS DURING THE PERIOD CHARGED IN THE INDICTMENT.
Since appellant's assignments of error hinge on the trial court's compliance with Crim.R. 11, that is where our analysis begins. Prior to accepting pleas of no contest or guilty pleas in felony cases, Crim.R. 11 requires the trial court to follow certain specified procedures. Those procedures are the same, regardless of whether the plea made is one of no contest or guilty. State ex rel. Stern v. Mascio (1996), 75 Ohio St.3d 422,662 N.E.2d 370. Although literal compliance with the rule is preferred, substantial compliance is what is required. State v. Caplinger (1995),105 Ohio App.3d 567, 664 N.E.2d 959.
The Supreme Court of Ohio has stated that
Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving (citations omitted). Furthermore, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect (citations omitted). The test is whether the plea would have otherwise been made (citations omitted).
State v. Nero (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474, 476.
I.
Appellant's First Assignment of Error argues that the trial court, in violation of Crim.R. 11(C)(1), erred in accepting appellant's plea of no contest because appellant was without counsel and the court failed to readvise him of his right to counsel before accepting the plea.
Crim.R. 11(C)(1) states
Where in a felony case the defendant is unrepresented by counsel the court shall not accept a plea of guilty or no contest unless the defendant, after being readvised that he or she has the right to be represented by retained counsel, or pursuant to Crim.R. 44 by appointed counsel, waives this right. (Emphasis added.)
Appellant's assertion is clearly unsupported by the record of the arraignment. The transcript of his hearing reveals that, after being informed of the charge against him and the potential penalty, the trial court told appellant that he had the right to be represented by counsel and that, if he could not afford his own attorney, the court would appoint one for him. The trial court then asked if appellant intended to be represented by counsel. Appellant responded in the negative. Pressing the issue, the court asked if appellant wanted the court to appoint an attorney for him, to which appellant responded, "No."
Following this exchange, the court explained the pleas and appellant stated that he wanted to plead no contest. Further exchanges occurred between the court and appellant concerning his rights and how a plea of no contest operated to waive these rights. Then, prior to accepting appellant's plea, the court stated the following:
Very well I'm satisfied that you understand all of that at this point and we already reviewed this but I want to make sure it is your desire to go ahead as you are at this time Mr. Firestone as you are on your own that is to say without an attorney is that correct? [sic]
Appellant responded in the affirmative to this question.
Therefore, since the trial court literally complied with Crim.R. 11(C)(1), appellant's First Assignment of Error is OVERRULED.
 II.
Appellant's Second Assignment of Error is that the trial court did not substantially comply with Crim.R. 11(C)(2) because it failed to inform appellant of the availability of an affirmative defense to the charge. Appellant relies on State v. Dickey (1984), 15 Ohio App.3d 151,473 N.E.2d 837. The Dickey court held that a defendant could not knowingly, voluntarily, and intelligently enter a plea of no contest to a felony, in compliance with Crim.R. 11, where the court did not inform the defendant of the availability of an affirmative defense to the specified charges. Id.
The court must determine that a defendant understands the nature of the charges against him, and this necessitates that a defendant be informed of the crime charged. The Dickey court indicated that affirmative defenses were critical elements of the crime and that a defendant would have to be informed of them in order for the defendant to make a knowing, intelligent, and voluntary plea. See Dickey at 152,473 N.E.2d at 838-839.
Contrary to Dickey, the Supreme Court of Ohio has held that affirmative defenses are not elements of the charge and that the court is not required to inform a defendant of available affirmative defenses. Statev. Reynolds (1988), 40 Ohio St.3d 334, 533 N.E.2d 342.
Since we find that Reynolds supercedes Dickey, and is controlling, we find that the trial court was not required to inform appellant of any affirmative defenses that may have been available in order to substantially comply with Crim.R. 11. Therefore, appellant's Second Assignment of Error is OVERRULED.
 III.
Appellant's Third Assignment of Error is that he could not knowingly have entered a plea of no contest because the court failed to inform him that a subsequent conviction on the same charge would carry with it an enhanced penalty.
R.C. 2919.21(G) states that "If the offender previously has been convicted of or pleaded guilty to a felony violation of this section, a violation of division (A)(2) or (B) of this section is a felony of the fourth degree." Appellant had pled no contest to a charged violation of R.C. 2919.21(B) and, because of the extended period of nonpayment, a guilty finding on that charge was a felony in the fifth degree. Therefore, if in the future appellant is again convicted of or pleads guilty to a violation of R.C. 2919.21(B), that conviction would be a fourth-degree felony and would carry with it the potential for a greater penalty.
The requirements of Crim.R. 11 involve informing a defendant of the current effects of his plea of no contest. The rule requires that a defendant be informed of the maximum penalties that a conviction of the pending charge may carry. See Crim.R. 11(C)(2). Appellant seeks to expand the requirement to informing defendants of the maximum penalties of a subsequent fictitious conviction not before the court.
The Ninth District Court of Appeals has addressed this issue and has stated,
 The only possible way that a defendant can be subject to additional criminal liability under a repeat offender statute is to be convicted of committing a subsequent crime. At the time of his conviction for the first offense, a defendant is not subject to this criminal liability. Therefore, information about the "maximum penalty" or the "effect of his guilty plea" need not include advice that a subsequent conviction for similar offenses will subject a defendant to additional criminal liability.
State v. Porter (1976), 49 Ohio App.2d 227, 229, 360 N.E.2d 759,761.
As Crim.R. 11 does not require the court to inform appellant of the potential penalties of future crime, appellant's Third Assignment of Error is OVERRULED.
 IV.
In his Fourth Assignment of Error, appellant argues that the trial court misled him into thinking that by pleading no contest he would still be able to present evidence in his defense and prove his innocence.
To determine if the trial court properly informed appellant of the implications of a no contest plea, we must ascertain what was said at the arraignment. The court initially told appellant that if you plea no contest that means your not disputing the complaint itself but that you want the opportunity to explain or justify what would be a violation of the law than it leaves it up to the court to make a decision whether you are guilty or not guilty * * * [sic]
Clearly, if that were the only thing the court had said, appellant would have been misled into believing he would have an opportunity to mount a defense even after pleading no contest, but the court did not stop there.
After the court made that statement, it asked appellant how he wanted to plead, and appellant answered in an ambivalent manner. The court then reiterated
 Again just I think I said this what a no contest plea means is it means your not disputing the complaint. [sic]
* * *
 If you plea no contest I will review your rights with you and if I accept you plea of no contest I will than ask Mr. Gleeson to make some kind of statement as to why the case was filed other words a summary of what the reasons are the facts if you will. The Court would than consider those facts and make a decision. If the facts support the charge than you would be found guilty if the facts did not support the charge you would be found not guilty. That is the way the no contest plea works. [sic]
After receiving this information, appellant stated that "OK. I plead no contest." By the time this plea was entered, any misunderstanding of the effects of the no contest plea had been settled by the court's subsequent explanation of the impact of such a plea. The court properly informed appellant of the effects of his no contest plea and did not mislead him into thinking that he could still present a defense after entering such a plea.
Furthermore, when the trial court explained the rights appellant was waiving by entering a plea of no contest, appellant was once again informed by the trial court that the right to present a defense would be waived.
Therefore, appellant's Fourth Assignment of Error is OVERRULED.
 V.
Appellant's Fifth Assignment of Error states that, because the trial court was made aware by appellant that his nonpayment of support was due to medical reasons and pending workers' compensation claims, the court erred in finding appellant guilty. In furtherance of his argument, appellant states that both the prosecution and court were aware that he was not working during the entire time of non-payment due to a disability recognized by another state agency.
However, by pleading no contest, the appellant waived his right to provide evidence of his innocence or the reasons for his nonpayment. The no contest plea is an admission to the facts as laid out by the prosecution. "`The essence of the "no contest" plea, is that the accused cannot be heard in defense. Thus any statement by him must be considered as in mitigation of penalty.'" State v. Herman (1971), 31 Ohio App.2d 134,140, 286 N.E.2d 296, 300, quoting Schneider, Ohio Criminal Code (3 Ed. 1963), Section 10.1, fn. 4.
The court properly considered in mitigation of penalty, and not in its determination of guilt, the reasons for non-payment, which could possibly have constituted grounds for an affirmative defense, but were waived by appellant.
Therefore, appellant's Fifth Assignment of Error is OVERRULED.
 CONCLUSION
Since the trial court substantially complied with Crim.R. 11, we find appellant's arguments to be without merit. Therefore, the judgment of the trial court is AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the VINTON COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEENPREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, IT IS TEMPORARILYCONTINUED FOR A PERIOD OF SIXTY (60) DAYS UPON THE BAIL PREVIOUSLYPOSTED. The purpose of the continued stay is to allow appellant to file with the Supreme Court of Ohio an application for stay during the pendency of proceedings in that court.
If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of appellant to file a notice of appeal with the supreme court of Ohio within the forty-five (45) day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J., and Kline, J.: Concur in Judgment and Opinion as to Assignments of Error I, II, and III; Concur in Judgment Only as to Assignments of Error IV and V.
 ________________________________ David T. Evans, Judge