DECISION.
{¶ 1} Appellant Bertram Alexander appeals from his conviction for one count of nonsupport in violation of R.C. 2919.21(A)(2). We are constrained to affirm.
 {¶ 2} The indictment charged that between the dates of June 21, 2000, and June 22, 2002, Alexander had failed to provide for his minor child, Amon. The indictment specifically stated that Alexander had failed to provide support for an accumulated period of 26 out of 104 consecutive weeks.
 {¶ 3} The domestic relations court had previously set child-support payments at a monthly rate of $256.68 plus a 2% fee. The payment obligation ceased on June 22, 2002, when Amon turned 18. At some point, the domestic relations court's account may have had a balance due. But the trial record is sorely lacking.
 {¶ 4} Two things are clear. First, after Alexander had petitioned the domestic relations court for credit for some payments not previously applied, the account was substantially reduced. Second, Alexander had paid in full when he pleaded no contest.
 {¶ 5} Here Alexander argues that he overpaid child support and that at the time of the indictment he was actively litigating his arrearage, if any, so that the account in domestic relations court could be properly settled. While Alexander was litigating how much he owed, the state indicted him. We see no rational explanation for why that occurred.
 {¶ 6} Within the record, we find several entries regarding the responsibilities of both Alexander and his former spouse to their child. An entry of September 8, 1999, put Alexander ahead
by $3,215. A July 16, 2003, entry with the consent of both parties gave Alexander a credit of $1,600. This same entry then indicated that Alexander was $1,809 in arrears. But the entry gave no indication whether the prior overage had ever been applied nor did it indicate if the domestic relations litigation had ended.
 {¶ 7} While the domestic relations court was attempting to determine the amount, if any, Alexander owed, the state moved to preclude the introduction of evidence of entries of the domestic relations court issued after the indictment was returned. The state seemed to believe that even if the domestic relations court had determined that Alexander owed no money for the period in question, he was somehow still guilty. Balderdash. If the domestic relations court determined that he had paid, he paid. This is just another bizarre twist in this case.
 {¶ 8} We stress that if the record had indicated that between June 21, 2000, and June 22, 2002, Alexander had overpaid, we certainly would reverse his conviction based on insufficient evidence. At a pretrial hearing in the trial court, Alexander's counsel had attempted to explain to the trial court his efforts to obtain documentation showing that Alexander had not failed to pay his child support. Counsel stated, "We were in court probably about a year and a half before [the criminal charge] was ever instituted trying to get a clear understanding as to what Mr. Alexander's arrearage and obligations were as it existed in the support account when multiple audits were conducted in detail. I have a copy of the various entries that were entered with regards to that."
 {¶ 9} Unfortunately, not all documents referred to by counsel made it into the record before us. While these documents might have indicated that Alexander had overpaid, we are bound to examine only the record before us. Based on it, we cannot definitively state that Alexander had either met or overpaid his support obligation during the dates in question.
 {¶ 10} On the date set for a bench trial the state and Alexander entered into a plea agreement. Alexander pleaded no contest to a misdemeanor violation of R.C. 2919.21(A)(2), and the state dismissed count two of the indictment. The trial court found Alexander guilty but imposed no punishment; even the court costs were remitted.
 {¶ 11} On appeal, Alexander brings four assignments of error, alleging that the trial court erred when it (1) found him guilty after the state had failed to set forth sufficient facts to establish each element of the offense; (2) failed to advise him of affirmative defenses to the charge; (3) failed to advise him of the effect of his no-contest plea; and (4) found him guilty after the state's explanation of the circumstances did not establish the elements of the offense.
 {¶ 12} Under R.C. 2937.07 a plea of no contest to a misdemeanor offense "shall constitute a stipulation that the judge * * * may make a finding of guilty or not guilty from the explanation of the circumstances of the offense."[1] In interpreting the statute, the Ohio Supreme Court has held that a trial court is not required to consider a statement from the accused before passing judgment for a crime that is a misdemeanor.[2] But the court has also held that R.C.2937.07 confers a substantive right for a defendant who pleads no contest to be discharged where the explanation fails to establish all elements of the offense.[3] The state may not remain silent; an explanation of the circumstances from the state is required before a guilty finding may result from a no-contest plea.[4]
 {¶ 13} In this case, the state narrowly met its burden to present an explanation of the circumstances. R.C. 2919.21(A)(2) states that "[n]o person shall abandon, or fail to provide adequate support to * * * [t]he person's child who is under age eighteen, or mentally or physically handicapped child who is under age twenty-one."
 {¶ 14} As an explanation, the prosecutor stated the following: "[I]n Hamilton County, State of Ohio from June 21, 2000, to June 22, 2002, the defendant recklessly abandoned, or failed to provide support for his child who is under the age of 21, Amon Brewer Alexander. That's all in violation of Section2919.21(A)(2), a misdemeanor of the first degree." Had the state merely recited the elements of the offense, it would not have met its burden.[5] Here, however, the state indicated dates involved and the name of the minor child to whom Alexander was obliged.
 {¶ 15} Alexander's first and fourth assignments of error argue that the state established neither recklessness nor the proper age of the child, and therefore that the state did not set forth the elements of the offense. A violation of R.C.2919.21(A)(2) is not a strict liability offense. The Ohio Supreme Court has held that while the General Assembly could have imposed strict liability under the statute, it did not.[6] The court deemed recklessness to be the proper standard.
 {¶ 16} In this case, the record indicates continued efforts by Alexander to ensure his son's proper support. It is unclear why Alexander was indicted in the first place. Nonsupport of children is a terrible problem. But Alexander does not seem the type of person whom the law should spend its resources pursuing. The record clearly indicates that at times Alexander was thousands of dollars ahead of his payment schedule and that he ensured his child's therapy by paying the child's mother's half of the cost. In fact, according to the record, the mother failed to follow a court order, but appears to have faced no consequences.
 {¶ 17} But by pleading no contest to the facts in the explanation of circumstances, Alexander allowed the prosecution to establish recklessness.
 {¶ 18} Alexander's argument that the statement of the child's age rendered the explanation of the circumstances insufficient for a guilty verdict also fails. The statute in question called for Amon to be under the age of 18, not 21, as found in the explanation of circumstances. This was at most a de minimus error. At all times relevant to the no-contest plea, the record established Amon to be under the age of 18.
 {¶ 19} Alexander's first and fourth assignments of error are overruled.
 {¶ 20} In his second assignment of error, Alexander argues that the trial court erred when it failed to advise him of the affirmative defenses to the charge of nonsupport. Alexander relies upon State v. Dickey, which reasoned that when a defendant enters a plea of no contest without clear knowledge of available affirmative defenses, the defendant does not knowingly, understandingly and voluntarily enter his plea.[7] We rely instead upon State v. Reynolds, a decision of the Ohio Supreme Court. It held that a court is not required to inform a defendant of statutory affirmative defenses because they are not elements of the crime.[8] Dickey is no longer good law.
 {¶ 21} Alexander's second assignment of error is without merit.
 {¶ 22} In his third assignment of error, Alexander argues that the trial court committed reversible error by failing to advise him of the effect of his plea of no contest. In misdemeanor cases involving serious offenses, the court is not to accept a plea "without first addressing the defendant personally and informing the defendant of the effect of the pleas of guilty, no contest, and not guilty and determining that the defendant is making the plea voluntarily."[9]
 {¶ 23} The trial court addressed Alexander directly before accepting his plea. The colloquy went beyond what was necessary to ensure a defendant's rights for a misdemeanor:
 {¶ 24} THE COURT: Okay. So, do you understand then the merit of the plea bargain?
 {¶ 25} THE DEFENDANT: Yes, sir.
 {¶ 26} THE COURT: And you make this plea voluntarily and of your own free will?
 {¶ 27} THE DEFENDANT: Yes, sir.
 {¶ 28} THE COURT: Do you understand the charge?
 {¶ 29} THE DEFENDANT: Yes.
 {¶ 30} THE COURT: And it is a misdemeanor of the first degree and carries up to six months and a $1,000 maximum, possible fine. Since you paid everything off, I'm going to cost remit it. Do you understand that?
 {¶ 31} THE DEFENDANT: Yes, sir.
 {¶ 32} THE COURT: Okay. And you are how old now?
 {¶ 33} THE DEFENDANT: How old?
 {¶ 34} THE DEFENDANT: Fifty-two.
 {¶ 35} MR. BELL: Soon to be 53.
 {¶ 36} THE COURT: Can you read and write?
 {¶ 37} THE DEFENDANT: Yes, sir.
 {¶ 38} THE COURT: I got a written plea form here, you signed this; is that right?
 {¶ 39} THE DEFENDANT: Yes, sir.
 {¶ 40} THE COURT: By signing that you are telling me you read it over and it was explained to you and you fully understand that?
 {¶ 41} THE DEFENDANT: Yes.
 {¶ 42} THE COURT: Read the facts, just briefly.
 {¶ 43} MS. KIM: Briefly, in Hamilton County, State of Ohio from June 21, 2000 to June 22, 2002, the defendant recklessly abandoned, or failed to provide support for his child who is under the age of 21, Amon Brewer Alexander. That's all in violation of Section 2919.21(A)(2), a misdemeanor of the first degree * * *.
 {¶ 44} THE COURT: When you plead guilty — no contest, excuse me. You don't make a complete admission, but you admit the facts. You admit the facts stated by the prosecutor in the indictment as being true. You don't admit actually to guilt, you did admit all the facts as stated by the prosecutor?
 {¶ 45} THE DEFENDANT: Yes.
 {¶ 46} THE COURT: And, do you understand, as soon as I hear all that testimony, which I have just heard, and as soon as we get through this plea here, I could find you guilty then. Do you understand that?
 {¶ 47} THE DEFENDANT: Yes.
 {¶ 48} THE COURT: And I already indicated what I was going to do as far as sentencing. I was going to just cost remit it. Do you understand that?
 {¶ 49} THE DEFENDANT: Yes.
 {¶ 50} THE COURT: And you're a citizen of the U.S.?
 {¶ 51} THE DEFENDANT: Yes, sir.
 {¶ 52} THE COURT: Are you on probation or parole?
 {¶ 53} THE DEFENDANT: No.
 {¶ 54} THE COURT: When you plead guilty — no contest, do you understand you give up your right to have a jury trial?
 {¶ 55} THE DEFENDANT: Yes.
 {¶ 56} THE COURT: That you're submitting it to me.
 {¶ 57} THE DEFENDANT: Yes.
 {¶ 58} THE COURT: You also have the right to have witnesses against you come into court and be cross-examined.
 {¶ 59} THE DEFENDANT: Yes.
 {¶ 60} THE COURT: You also have a right to bring witnesses in to testify for you.
 {¶ 61} THE DEFENDANT: Yes, sir.
 {¶ 62} THE COURT: You also give up your right to make the State prove your guilt beyond a reasonable doubt at trial because, again, you're submitting the case on the facts to me. Do you understand that?
 {¶ 63} THE DEFENDANT: Yes, sir.
 {¶ 64} THE COURT: And, finally, you give up your right to a trial also where you can't be forced to give testimony against yourself because, again, you're admitting — you're in court and you are admitting to the facts. Do you understand that?
 {¶ 65} THE DEFENDANT: Yes, sir.
 {¶ 66} THE COURT: Have you taken any drugs, medicine or alcohol during the last day?
 {¶ 67} THE DEFENDANT: No.
 {¶ 68} THE COURT: You are making this plea with a clear mind?
 {¶ 69} THE DEFENDANT: Yes, sir, I do.
 {¶ 70} THE COURT: Based on everything we have gone over, did you still wish to enter this plea of no contest?
 {¶ 71} THE DEFENDANT: Yes sir.
 {¶ 72} The record is clear that the court fully informed Alexander of the rights given up by a no-contest plea. The third assignment of error is overruled.
 {¶ 73} Though Alexander's prosecution perplexes us, we have no choice but to affirm the trial court's judgment.
Judgment affirmed.
Doan, P.J., and Gorman, J., concur.
[1] R.C. 2937.07.
[2] See State v. Waddell, 71 Ohio St.3d 630-31, 1995-Ohio-31,646 N.E.2d 821.
[3] See Cuyahoga Falls v. Bowers (1984), 9 Ohio St.3d 148,150, 459 N.E.2d 532.
[4] See State v. Hoskins (June 14, 1999), 12th Dist. No. CA98-07-143.
[5] Id.
[6] See State v. Collins, 89 Ohio St.3d 524, 2000-Ohio-231, 530, 733 N.E.2d 1118.
[7] State v. Dickey (1984), 15 Ohio App.3d 151,473 N.E.2d 837.
[8] See State v. Reynolds (1988), 40 Ohio St.3d 334,533 N.E.2d 342, syllabus.
[9] Crim.R. 11(D).